# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 2:14-cv-3-RJC

| | |
|---|---|
| JOHNATHAN EUGENE HENDERSON, )<br>)<br>   **Plaintiff,**  )<br>)<br>vs.       )<br>)<br>CAROLYN W. COLVIN,  )<br>**Acting Commissioner of Social Security** )<br>)<br>   **Defendant.**  )<br>_____ ) | **ORDER** |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 9), and Memorandum in Support, (Doc. No. 10), and Defendant's Motion for Summary Judgment, (Doc. No. 11), and Memorandum in Support, (Doc. No. 12).

**I. BACKGROUND**

 A. <u>Procedural Background</u>

Plaintiff Johnathan Henderson ("Plaintiff") seeks judicial review of the Commissioner's denial of his social security claim. (Doc. No. 1). Plaintiff protectively applied for disability insurance benefits ("DIB") and for supplemental security income (SSI) payments on January 6, 2011, alleging disability beginning March 1, 2010. (Tr. 153, 155, 157). His applications were denied initially and upon reconsideration. (Tr. 130, 139). At Plaintiff's request an administrative law judge (ALJ) held a hearing on July 19, 2012. (Tr. 47). Plaintiff, represented by counsel, testified at the hearing, as did a vocational expert ("VE"). (Tr. 47-73). On September 20, 2012, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 16-29). The Appeals

Council denied Plaintiff's request for review on November 6, 2013, thus making the ALJ's decision the final decision of the Commissioner. (Tr. 1-5).

B. Factual Background

The question before the ALJ was whether Plaintiff was disabled under Sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. (Tr. 16). After reviewing all the evidence, the ALJ concluded that Plaintiff "has not been under a disability within the meaning of the Social Security Act from March 1, 2010, through the date of this decision." (Id.).

To determine whether a claimant is disabled, the SSA established a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he or she can make an adjustment to other work—if yes, not disabled.

See 20 C.F.R. § 404.1520(a)(4)(i-v).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any time after his alleged onset date of disability of March 1, 2010. (Tr. 17). At step two, the

ALJ found that Plaintiff had the following severe impairments: degenerative disc disease and borderline intelligence. (Tr. 19). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19-22). Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work; to stand; to sit; and to walk, each, six to eight hours in an eight-hour day; to push and pull with the extremities without limitation; to climb ladders, ropes, and scaffolds occasionally; and to stoop, kneel, crouch, and crawl occasionally. (Tr. 22-23). The ALJ found no limitations in climbing ramps and stairs, balancing, reaching, or handling. (Tr. 23). The ALJ found that Plaintiff needed to avoid concentrated exposure to hazards, and that Plaintiff could perform simple one-to-two step tasks with low stress, defined as non-production work. (Tr. 23).

At step four, the ALJ found that Plaintiff could not perform his past relevant work. (Tr. 28). At step five, however, based on the VE's testimony given in response to a hypothetical question that incorporated Plaintiff's RFC, the ALJ found that Plaintiff could perform work that existed in significant numbers in the national economy. (Tr. 28-29). Accordingly, the ALJ appropriately concluded that Plaintiff was not disabled under the Social Security Act. (Tr. 29).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v.

Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

On appeal to this Court, Plaintiff argues that the ALJ erred as a matter of law in denying his claims on three grounds: (1) the ALJ erred in failing to find that Plaintiff met Listing 12.05C; (2) the ALJ erred in failing to find that Plaintiff met Listing 1.04A; and (3) the ALJ erred pursuant to SSR 00-4p when he relied on vocational expert ("VE") testimony that conflicted with the Dictionary of Occupational Titles ("DOT").

4

A.  Whether ALJ erred in failing to find that Plaintiff met Listing 12.05C

Listing 12.05 requires a claimant to meet the capsule definition of mental retardation, which means that the individual has "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1. Listing 12.05C is met when the claimant's condition meets the above definition and the claimant has a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other impairment imposing an additional and significant work-related limitation of function. Id. It is Plaintiff's burden to prove that his impairment met or medically equaled all of the criteria of the relevant listing. Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990).

Plaintiff asserts that he has meet all of the requirements of Listing 12.05C. First, Plaintiff argues that the only IQ evidence of record established that Plaintiff had a full-scale IQ of 65. (Tr. 296); thus the Plaintiff contends he has established that he meets the IQ prong of Listing 12.05C. (Doc. No. 10 at 5). Second, Plaintiff asserts that the ALJ found Plaintiff to suffer from severe impairment of degenerative disc diseases (Tr. 19), and that this impairment caused Plaintiff's residual functional capacity to be diminished to a capacity for medium work with additional postural limitation. Due to the fact that Plaintiff has an additional "severe impairment" as defined in 20 C.F.R. §§ 404.1520(c) and 416.920(c), Plaintiff asserts that he meets the criteria of the additional significant prong. Lastly, Plaintiff asserts that the record demonstrates that Plaintiff satisfied the preliminary requirement of deficits in adaptive functioning, which Plaintiff argues initially manifested themselves prior to age 22. Plaintiff contends that he reported being enrolled in special education classes in elementary school, failing the 7th grade, failing the second grade, and dropping out of school in the 9th grade. (Tr. 294). Plaintiff also contends he

5

reported significant difficulties with maintaining appropriate attendance at work. (Tr. 294). Furthermore, Plaintiff asserts that he was granted Medicaid benefits by the North Carolina Department of Health and Human Services on the basis of Plaintiff meeting the requirements of Listing 12.05C. (Tr. 299). Therefore, Plaintiff asserts that he met all the requirements of Listing 12.05C and should have been found disabled at Step 3.

     This Court disagrees with Plaintiff. It is clear that the ALJ thoroughly analyzed all of the medical and non-medical records and appropriately concluded that Plaintiff's mental impairment did not meet all the requirements of Listing 12.05C. (Tr. 20-21). The expert opinions of the consultative examiner and State agency medical consultants all support the ALJ's 12.05C finding (Tr. 78, 80, 104-105, 293). First, Plaintiff failed to prove that he satisfies the listing requirement to have valid IQ scores. (Tr. 93). Listing 12.05C requires, among other things, "a valid verbal, performance, or full scale IQ of 60 through 70." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. However, here four acceptable medical sources opined that Plaintiff's sole IQ scores were not a valid measure of Plaintiff's actual intellectual functioning. (Tr. 93, 103).

     Second, Plaintiff failed to prove that he had deficits in adaptive functioning initially manifested before age 22. Plaintiff provided no school records to document Plaintiff's intellectual functioning before age 22. (Tr. 20). Although Plaintiff reported that he left school after eight grade, that he was in special education in elementary school, and that he had attendance problems at work, these various factors do not establish that he had deficits in adaptive functioning. At step three, "the medical evidence of a claimant's impairment is compared to a list of impairments presumed to be severe enough to preclude gainful work." Sullivan, 493 U.S. 521, 525 (1990). Here, Plaintiff has failed to present medical findings showing that each listing requirement is met. Lastly, Plaintiff points to the North Carolina

6

Medicaid determination as evidence that the ALJ erred in finding to the contrary. (Doc. No. 10 at 7). However, the Medicaid determination did not identify any of the State hearing officer's qualifications, and there was no evidence put forth to show that the hearing officer was an acceptable medical source as defined in 20 C.F.R. §§ 404.1413(a) and 416.913(a). (Tr. 21). For these reasons, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff's condition did not meet the requirements of Listing 12.05C.

      B.      <u>Whether ALJ erred in failing to find that Plaintiff met Listing 1.04A.</u>

Listing 1.04A is met with "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. Plaintiff argues that the ALJ erred by finding that his degenerative disc disease did not meet the requirements of Listing 1.04. (Doc. No. 10 at 10-11). Plaintiff asserts that he has nerve root impingement as evidence by the results of MRI's which revealed: disc herniation at L5-S1 with right S1 nerve root compromise (Tr. 279); disc herniation at L5-S1 with an extruded disc fragment on the right impinging on the right S1 nerve root (Tr. 377); and disc bulge at L4-L5 which extended into the nerve root exist foreman bilaterally (Tr. 367). Plaintiff also contends that he demonstrated nerve impingement and motor loss as evidenced by reduced strength in the right quadriceps and core muscles. (Tr. 318, 319). Lastly, Plaintiff asserts the he exhibited: sensory loss in the form of decreased reflexes (Tr. 287, 292); an antalgic gait which was characterized by a limp on the right side (Tr. 287, 301, 08); and positive straight leg raising tests (Tr. 255, 298, 308). Therefore, Plaintiff argues that he meets all of the

requirements for Listing 1.04A and should have been found disabled at Step 3.

      This Court disagrees and finds that the ALJ did not err in determining that Plaintiff failed to meet Listing 1.04A. In order for "a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan, 493 U.S. at 530 (1990); 20 C.F.R. § 404.1525(d). Plaintiff carries the burden of producing evidence demonstrating that his back impairment satisfied all of the criteria of Listing 1.04A. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) ("The applicant bears the burden of production and proof during the first four steps of the inquiry."). Although Plaintiff's back impairment met some of the requirements of this listing, it did not meet all of them. Based upon the record, Plaintiff did not have the requisite motor loss, which Listing 1.04A defines as "atrophy with associated muscle weakness or muscle weakness." (Doc. No. 10 at 11). The record also does not support the finding that there was listing level sensory of reflex losses. Although Plaintiff points to four instances of reduced reflexes overall, tests of Plaintiff's reflexes and sensory function overall were consistently noted to be "stable" or "normal." (Tr. 282, 333, 335, 337, 341, 370).

      Furthermore, Listing 1.04A requires that the straight leg raise test be performed both sitting and supine. Although there are positive straight leg raise test results in the record, this documentation does not indicate whether the test was performed in a sitting or supine position; nor does it indicate that the tests were performed in both positions, as this listing requires (Tr. 308, 311, 318). It is clear that Plaintiff failed to meet its burden of producing evidence demonstrating that his back impairment satisfied all the criteria of Listing 1.04A. For this reason,

the Court finds that the ALJ's determination was supported by substantial evidence.

> C. Whether the ALJ erred pursuant to SSR 00-4p when he relied on vocational expert testimony that conflicted with the Dictionary Occupational Titles.

SSR 00-4p requires that where "there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." Specifically, the ALJ "will inquire, on the record, as to whether or not there is such consistency." The ALJ "must resolve this conflict before relying on the [vocational expert] evidence to support a determination or decision that the individual is or is not disabled" and must "explain in the determination or decision how he or she resolved the conflict." Fisher v. Barnhart, 181 Fed. Appx. 359, 365 (4th Cir. 2006).

Here, the ALJ found that the Plaintiff's RFC capacity was for medium work with postural and environmental limitations and further limited to performing simple one-to-two step tasks with low stress. (Tr. 22-23). The VE testified that the Plaintiff could perform medium, unskilled jobs such as industrial cleaner, warehouse worker, and kitchen helper. (Tr. 29). Plaintiff asserts that the Reasoning Code requirements for the three jobs the VE testified the Plaintiff could do were all inconsistent with the ALJ's RFC limiting the Plaintiff to one-to-two step tasks and that the ALJ neglected his obligation under SSR 00-4p to resolve the inconsistencies in the VE's testimony. Furthermore, Plaintiff asserts that the mere fact that the ALJ asked the VE whether his testimony was consistent with DOT does not satisfy the ALJ's duty to elicit a reasonable explanation for any possible conflict. Plaintiff cites to the Eight Circuit case of Kemp ex. rel. v. Colvin, 743 F.3d 630 (8th Cir. 2004), in which the Court found that, "[w]hile ALJ gave specific directions to the VE before he testified, the record does not reflect whether the VE or the ALJ even recognized the possible conflict between the hypothetical describing a claimant who could

9

reach overhead only occasionally, and DOT job listing #737.687-026 indicating that a check-weigher job involved constant reaching." Therefore, Plaintiff contend because neither the VE nor the ALJ recognized the conflict between the VE evidence and the DOT the case should be remanded.

The Court disagrees with the Plaintiff and finds that the ALJ did not err pursuant to SSR 00-4p. It has been established that the ALJ may rely on VE testimony to find that a plaintiff can perform a significant number of jobs at step five of the sequential elevation. Hammond v. Heckler, 765 F.2d 424, 425 (4th Cir. 1985). To be reliable, a VE's opinion must respond to proper hypothetical questions which fairly set out all of the plaintiff's impairments. Walker v. Brown, 846 F.2d 1097, 1100 (4th Cir. 1989).

Here, complying with SSR 004-p, the ALJ asked the VE whether his response was consistent with the DOT, and the VE responded in the affirmative. (Tr. 69). The VE indicated that an individual who could only perform simple one-to-two step tasks could perform the occupations of industrial cleaner, warehouse worker, and kitchen helper. (Tr. 69). Plaintiff argues that he cannot perform any of the three occupations the VE identified because each occupation has a general education reasoning level of 2, which Plaintiff contends conflicts with the ALJ's limitation to simple one-to-two step tasks. (Doc. No. 10 at 12). However, Plaintiff cites to no legal authority for its proposition; instead, it appears that a claimant limited to performing simple one or two step tasks can perform an occupation with a reasoning level of two or even three. Lovell v. Astrue, No. 2:12-cv-00128, 2013 WL 174886, *8 (D. Vt. Jan. 16, 2013) (rejecting argument that claimant's limitation to one to three step instructions precluded reasoning level two or three jobs); Thacker v. Astrue, No. 3:11-cv-00246, 2011 WL 7154218, at *4 (W.D.N.C. Nov. 28, 2011) ("The requirements of [DOT] reasoning level three are consistent

with a limitation to simple, unskilled work."). Plaintiff's cite to Kemp ex. rel. v. Colvin, 743 F.3d 630 (8th Cir. 2004). However, contrary to Kemp, here Plaintiff has not established that any conflict existed between the hypothetical question and the VE's testimony. For these reasons, the Court finds that the ALJ did not err under SSR 00-4p.

**IV. CONCLUSION**

In light of the deferential standard of review applied under the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), the Court finds that there is substantial evidence to support the Commissioner's final decision.

    **IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 9) is **DENIED**, and
2. Defendant's Motion for Summary Judgment, (Doc. No. 11), is **GRANTED**;
3. The Clerk of Court is directed to close this case.

Signed: March 31, 2015

_____
Robert J. Conrad, Jr.
United States District Judge